IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Felicia N. Smith, | Case No. 3:20 CV 4 |
| Plaintiff, | ORDER ADOPTING |
| -vs- | <u>REPORT AND RECOMENDATION</u> |
| Commissioner of Social Security, | JUDGE JACK ZOUHARY |
| Defendant. | |

Plaintiff Felicia Smith seeks judicial review of an adverse social security decision under 42 U.S.C. § 405(g). This case was referred to Magistrate Judge Carmen Henderson for a Report and Recommendation ("R&R") under Local Civil Rule 72.2(b)(2). Judge Henderson recommends this Court affirm the Commissioner's decision denying Smith's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") (Doc. 18 at 1, 22). Smith objects to the R&R (Doc. 19); the Commissioner responds (Doc. 20).

### BACKGROUND

The R&R accurately recites the relevant factual and procedural background, which this Court adopts (Doc. 18 at 2–12). To summarize, Smith, age 42, alleged disability based on a myriad of physical and mental impairments, including: back pain, knee pain, heart disease, stomach pain, painful swallowing, arthritis, muscle spasms, facial tingling/numbness, anxiety attacks, short-term memory loss, and diabetes (*id.* at 2–3). Smith also stated she cannot read a newspaper, recipes, or signs at a store; and needs assistance organizing her medications (*id.* at 3).

In May 2014, seventeen months prior to the alleged onset of disability, Smith received a psychological exam from Albert Virgil, Ph.D., which revealed Borderline Intellectual Functional ("BIF") (Doc. 11 at 1117–22). Virgil noted that Smith struggled with simple math and logic; but had no discernable limitations to her ability to concentrate, was properly oriented to the world around her, could understand and carry out instructions, could perform simple and multi-step tasks, and was mentally and emotionally capable of responding appropriately to pressure in a work setting (*id.*). In January 2016, Smith first reported symptoms of numbness, tingling, and pain on the side of her face to her primary care physician, Dr. Warren Morris, and was diagnosed with mononeuritis and diabetes (Doc. 18 at 3). At a follow up in 2017, Morris noted that Smith was not following a diabetic diet or regularly checking her blood sugar levels, and had some difficultly taking her medications as prescribed (*id.* at 4).

Smith filed applications for DIB and SSI in March 2017, alleging a December 2015 onset date (Doc. 16 at 2). The state agency responsible for making disability determinations on behalf of Defendant denied Smith's claims in April 2017 and again upon reconsideration in July 2017 (*id.*). Smith appealed further, and Administrative Law Judge ("ALJ") Paul Sher denied Smith's claims after a hearing, concluding that she "could perform a significant number of jobs in the economy" based on her age, education, work experience, and residual functioning capacity (*id.*). The Appeals Council denied Smith's request for review (Doc. 11 at 6).

### STANDARD OF REVIEW

In reviewing a denial of benefits, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). Judicial review is limited to

"whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). Smith acknowledges that the ALJ "does not have to provide good reasons for discrediting these opinions," but argues that additional explanation is warranted here (Doc. 19 at 3).

## DISCUSSION

There is a single issue for this Court to consider: whether the ALJ properly evaluated the opinions of the two medical experts -- Regina McKinney, Psy.D. and Mark E. Weaver, M.D. -- hired by the ALJ to examine Smith and provide additional testimony. These opinions were solicited to supplement the record, in part because the medical-source statements from Nurse Practitioner Courtney Baller were not "medical opinions" under 20 CFR § 404.1527 and § 416.927. A nurse practitioner does not qualify as an "acceptable medical source" under the statute (Doc. 11 at 224–25). Smith argues the ALJ failed to explain the weight given to the consultative opinions such that "a subsequent reviewer can properly trace the path of the ALJ's reasoning" (Doc. 19 at 2). What follows will show otherwise.

**Regina McKinney, Psy.D.**

Smith met with McKinney in August 2018 for a forensic psychology exam (Doc. 11 at 1588–99). McKinney noted that Smith appeared "anxious and depressed"; her eye contact was "minimal"; her thought processes were "shallow and concrete"; but that she displayed "no abnormalities of

3

mental content" (*id.* at 1595). With respect to cognitive functioning, McKinney stated Smith was "fully oriented," but had limited short term memory skills and difficulty completing mathematical problems (*id.*). McKinney observed that Smith's "judgment appear[ed] to be sufficient for her to make decisions affecting her future and to conduct her own living arrangements efficiently" (*id.* at 1596). McKinney opined that Smith had moderate limitations in her ability to understand, remember, and carry out simple instructions, and marked limitations with respect to complex instructions (*id.* at 1589–90). McKinney explained that Smith needed questions simplified and rephrased, noting her history of special education classes (*id.*). McKinney diagnosed Smith with: (1) borderline intellectual functioning; (2) major depressive disorder, recurrent, moderate; and (3) generalized anxiety disorder (*id.* at 1596). McKinney relied on her exam of Smith and review of the records provided to her.

The ALJ gave McKinney's opinion "some weight," explaining that (Doc. 11 at 229).:

> The medical evidence supports [that Smith] is significantly limited with performing and understanding complex tasks due to her diagnosis of BIF. However, the evidence does support that [Smith] is able to understand and perform simple, routine tasks such as, using a blood-glucose meter to test her blood sugar on a daily basis, knowing what foods are detrimental to her Type 2 diabetes, cooking by following YouTube video recipes, and caring for her minor children.

**Mark Weaver, M.D.**

Smith met with Weaver in August 2018 for a physical exam (*id.* at 1600–17). Smith was 5'10", 314 pounds with a BMI of 45, and recorded normal blood pressure, pulse, and respiration (*id.* at 1602). Weaver noted that his exam, "revealed a well-developed overly-nourished 42-year-old female who ambulated with a stiffened gait and a left limp complaining of left lower back pain . . . [who] did not use any ambulatory aids, braces, or other special equipment . . .". (*id*). He further noted Smith was not out of breath or complaining of chest pain after completing the physical-activity portions of the exam, which included walking forty feet up and down a hallway (*id.*). Observations of her head, neck, chest, heart and circulatory system, and abdomen were all normal (*id.* at 1603).

4

Grasp, manipulation, pinch, and fine coordination activities were normal in her left hand but abnormal in the right, which was "slow and hesitant with decreased coordination and finger pain" (*id.* at 1604). Weaver noted involuntary spasms of Smith's lower back muscles, but an overall normal range of motion (*id.* at 1608–09). Smith had some concentration difficulty and difficulty following directions during the exam (*id.* at 1605). Weaver opined that Smith could occasionally carry or lift up to ten pounds, could sit or stand for thirty minutes at a time, and walk for five minutes at a time (*id.* at 1611–12). For an eight-hour workday, she could sit for a maximum of four hours, stand for a maximum of three hours, and walk for a maximum of one hour (*id.* at 1612). Upon completion of the exam, Weaver diagnosed Smith with: "(1) Probable concentration difficulty . . .; (2) Probable chronic right-hand pain status/post contusion injury age 13; (3) Probably chronic asthma; and (4) Probable chronic low back and radicular left lower extremity pain, possible degenerative disc disease by medical history" (*id.* at 1605).

The ALJ gave significant weight to Weaver's opinion "that due to [Smith's] obesity, she would probably be limited in sustained sitting, standing, walking, climbing, lifting, carrying objects, working in environments with excessive smoke, odors, dust, heat, humidity, and chemical aerosols" (*id.* at 230, 1605). The ALJ explained that "[t]his opinion is consistent with the medical evidence and [Smith's] statements, and have been incorporated into the residual functional capacity assessment" (*id.* at 230). The ALJ gave little weight to the opinion that Smith could not handle objects in her right hand, "because there is no indication in the medical evidence that [she] treated for right-hand pain" (*id.*).

**ALJ Decision**

Consultative examiners, such as McKinney and Weaver, are designated as "other medical sources," requiring the ALJ to consider several factors when determining the weight to give the

opinions. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1502; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). These factors include the length and nature of the relationship, evidence supporting the opinion, whether the opinion is consistent with the record as a whole, whether the physician was practicing in his or her specialty, and other factors such as the familiarity with claimant's history and record. *Id.*; 20 C.F.R. § 404.1527(c).

The consults were requested to give additional context to Smith's condition, and the ALJ reviewed the evidence as a whole -- including medical records, Smith's hearing, the opinions of other medical sources, as well as the opinions of McKinney and Weaver -- when drawing his conclusions (Doc. 11 at 229–30). An ALJ need not give "good reasons" for discounting non-treating source opinions. ALJs must only provide a meaningful explanation regarding the weight given to particular medical source opinions. *Mason v. Comm'r of Soc. Sec.*, 2019 WL 4305764, at *7 (N.D. Ohio 2019). *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("But [if the physicians] are non-treating sources, the reasons-giving requirement is inapplicable to their opinions."). The Sixth Circuit has held that an ALJ's explanation should be sufficient "to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011). For instance, in *Stacey*, the ALJ improperly ignored a "critical" piece of evidence -- an examining-physician opinion that the claimant was "permanently limited to performing sedentary work." *Id.* There was no such critical evidence ignored in this case. The ALJ's explanation of McKinney and Weaver's opinions -- as described above -- is sufficiently detailed and supported by substantial evidence.

## CONCLUSION

Smith's Objection (Doc. 19) is overruled, and this Court adopts the R&R (Doc. 18) in its entirety. The ALJ decision is upheld; the Complaint is dismissed.

IT IS SO ORDERED.

                                                                         s/ *Jack Zouhary*
                                                                          JACK ZOUHARY
                                                                          U. S. DISTRICT JUDGE

                                                                          February 19, 2021